***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission affirms in part and reverses in part the Opinion and Award of Deputy Commissioner Jones.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between deceased employee (hereafter "decedent") and defendant.
3. Defendant is a duly self-insured and Hartford Specialty Risk Services, Inc. is the third party administrator.
4. The date of injury which is the subject of this claim is October 3, 1998.
5. Decedent's average weekly wage on October 3, 1998 was $814.88, which yields a compensation rate of $532.00 per week.
6. Defendant admitted liability for decedent's back injuries pursuant to a Form 60 dated November 17, 1998.
7. Defendant paid decedent total disability compensation in the amount of $532.00 per week from October 5, 1998 through December 30, 1998.
8. Defendant filed a Form 28 dated January 4, 1999, which stated decedent had returned to work on December 30, 1998.
9. The parties stipulated the following exhibits into evidence at the hearing before Deputy Commissioner Jones:
a. Stipulated Exhibit 1 — decedent's medical records
b. Stipulated Exhibit 2 — defendant's personnel policy
10. The following exhibits were entered into the evidence of record at the hearing before the Deputy Commissioner:
a. Defendant's Exhibit 2 — Johnny Anderson, timeline
b. Defendant's Exhibit 3 — Quest Diagnostics Forensic Drug Testing Custody and Control Form
c. Defendant's Exhibit 4 — Drugs and Alcohol in the Workplace
11. The issues before the Commission are whether decedent was entitled to total disability benefits from December 31, 1998 to May 31, 2000; whether decedent was entitled to temporary partial disability benefits from June 1, 2000 through December 27, 2001; is decedent entitled to a 10% penalty pursuant to N.C. Gen. Stat. § 97-18; was decedent entitled to medical treatment or other compensation; and did decedent unjustifiably refuse suitable employment when he tested positive for cocaine on October 5, 1998.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Decedent was 49 years old at the time of the hearing before Deputy Commissioner Jones. Decedent began his employment with defendant in 1982 or 1983 as a machine technician. Decedent had a high school education.
2. As a machine technician decedent ran a welder. His responsibilities included setting up the welder, welding the drive shaft, taking the drive shaft off the line after welding, putting the drive shaft on the line and putting on a sleeve called a yoke shaft.
3. Decedent testified most sleeves he used weighed 30-35 pounds. Decedent lifted the sleeve out of a basket on the floor, placed it on the line and, if the sleeve did not fit, he lifted the drive shaft off the line, removed the sleeve, sanded the area and reapplied the sleeve before placing it back on the assembly line.
4. Decedent completed the welding on one drive shaft approximately every four minutes and decedent stood during his shift.
5. Decedent worked an average of eight hours a day and had the opportunity to work overtime.
6. On Saturday October 3, 1998 at approximately 12:15 p.m., decedent was removing a sleeve on a drive shaft, which was stuck. He had difficulty getting the sleeve off and proceeded to bang it against the rail line to try to remove it.
7. When he was attempting to remove the sleeve, decedent felt a sharp sudden pain in his back and thought he had pulled a muscle.
8. Decedent's injury occurred as he was completing his shift, which was finished at 12:30 p.m. Decedent was scheduled to work on Sunday, October 4, 1998, but decedent testified he was unable to work because of his back pain.
9. On Monday, October 5, 1998, decedent contacted defendant to inform his employer that he was unable to report for work due to his back injury. He was told to pick up forms for a required drug test and was sent by defendant to Pro Med for drug testing. It was defendant's policy to perform a drug test following an injury. Decedent was unable to see a doctor that day due to Pro Med's staffing, but did complete the required drug test.
10. Decedent was treated at Pro Med on October 7, 1998 by Dr. Jane Edminston, who diagnosed him with lumbar strain. Decedent was written out of work for two weeks and was then to return to work in a modified capacity.
11. The results of decedent's drug test indicated decedent tested positive for the presence of cocaine, morphine and codeine in his blood. However, the drug testing was done two days after the date of injury.
12. Decedent learned of the positive test from the plant manager, Donna Ray Doyle, on December 9, 1998 when he dropped off paperwork from his physician. Ms. Doyle informed decedent he tested positive and asked decedent if he had a drug problem. Decedent testified that he told Ms. Doyle he did not have a drug problem and that the cocaine must be from some pain medication he had taken the previous day for pain. Decedent denied any cocaine use when questioned by Ms. Doyle.
13. Decedent had been injured twice while working for defendant and knew it was defendant's policy to perform a drug test any time there was an injury reported.
14. Decedent testified at the hearing before Deputy Commissioner Jones that after the injury by accident occurred, he used cocaine at the home of a friend between 8:00 p.m. and 9:00 p.m. on October 3, 1998. Decedent also admitted that he lied when he testified at a hearing for unemployment benefits when he represented that he had not used any drugs.
15. Decedent continued to be treated by Pro Med for lumbar strain by Dr. Patricia Henry. Dr. Henry referred decedent for physical therapy. Decedent was released by Dr. Henry for light duty work with restrictions of lifting 10 pounds or less from October 5, 1998 to November 23, 1998. Defendant did not have work available within decedent's restrictions and he remained out of work.
16. Dr. Alfred Rhyne, III of Charlotte Orthopedic Specialists, evaluated decedent on October 23, 1998. Dr. Rhyne indicated decedent's lumbar spine x-rays were negative. Dr. Rhyne recommended an MRI to rule out a right L4-5 HNP.
17. Defendant accepted liability for decedent's claim by filing a Form 60 on November 17, 1998. Decedent was paid temporary total disability benefits from October 4, 1998 through December 30, 1998.
18. On October 10, 1998, Dr. David DuPuy of Charlotte Orthopedic Specialists evaluated decedent. Dr. DuPuy found no evidence of focal disc herniation. Decedent's disc scan of L3/4 was normal. Dr. DuPuy concluded decedent had a broad base disc bulge at L5/S1 without evidence of focal disc herniation or nerve root impingement. Dr. DuPuy scheduled decedent for an FCE because he felt decedent's numbness in his toes was not consistent with decedent's nerve root distribution.
19. On November 23, 1998, the FCE decedent completed showed symptom magnification on 4 out of 5 tasks. Dr. DuPuy released decedent to return to work with a lifting restriction of 25 pounds.
20. Dr. DuPuy's notes indicate that he spoke with Mr. Kevin Breidenbach, defendant's new plant manager who was listed as defendant's workers' compensation contact. Mr. Breidenbach told Dr. DuPuy that defendant could not accommodate any light duty work and decedent would not be allowed to return to work until decedent could return to work without restrictions.
21. Dr. DuPuy released decedent to return to full duty work on December 14, 1998 with a 25 pound lifting restriction and no prolonged bending, stooping or squatting.
22. On December 29, 1998, decedent returned for follow-up evaluation with Dr. DuPuy. Dr. DuPuy felt decedent was at maximum medical improvement and was able to return to work without restrictions. Dr. DuPuy assigned a 3 % percent permanent partial disability rating to decedent's back.
23. Decedent contacted Mr. Breidenbach and was instructed not to return to work until January 5, 1999 because Mr. Breidenbach would be off until that date.
24. When decedent returned to work on January 5, 1999, Mr. Breidenbach and decedent attended a brief staff meeting and decedent was then asked to come to Mr. Breidenbach's office. Decedent was informed by Mr. Breidenbach he was being terminated because of his positive test for cocaine on October 5, 1998.
25. Decedent was not asked if he had used cocaine at work, or if he had a drug problem at the time of his termination.
26. Defendant's personnel policy states "reporting for, or being at work while intoxicated or under the influence of drugs. . . . may result in immediate termination of employment." Ms. Doyle testified it is defendant's policy to retain employees who admitted they had a drug problem as long as they were making progress toward recovery.
27. Ms. Doyle testified defendant's company policy stated that being under the influence of drugs would result in termination unless the employee agreed to seek help. According to Ms. Doyle, on two previous occasions employees had tested positive for drugs. In both cases the employees admitted their problem, asked for treatment and were allowed to remain employed. Ms. Doyle stated that an employee who did not admit having a drug problem with a positive drug test would be terminated. Defendant did not at the time of termination offer decedent the same assistance it had to the two previous employees who had problems with drug usage.
28. On January 4, 1999 defendant filed a Form 28 with a return to work date of December 30, 1998 and terminated decedent's disability benefits.
29. Decedent testified that contrary to his release by Dr. DuPuy on December 29, 1998, he was unable to return to work until May 31, 2000 due to back pain from his injury by accident.
30. An independent medical examination was performed by Dr. Ada Akande of Charlotte Pain Associated on February 23, 1999. Dr. Ankande's impression was decedent had myofascial low back pain, peripheral neuropathy, probably secondary to diabetes, and bulge in L5-S1 intervertebral disk. Dr. Akande recommended a quantitative sensory test to determine the degree of sensory loss and neuropathy/radiculopathy. He also recommended multiple trigger point injections and considered epidural steroid injections if trigger point therapy failed.
31. Decedent stated in his examination with Dr. Akande that he was a nonsmoker, drank alcohol occasionally and did not use illicit drugs. Decedent also reported complaints of insomnia as a result of his back pain.
32. Decedent returned to Dr. Rhyne on January 27, 1999, and on May 27, 1999. Dr. Rhyne prescribed medications and encouraged decedent's participation in a strengthening and stability program. Dr. Rhyne did not write decedent out of work or give him any restrictions related to his work activities.
33. As of June 1, 2000 decedent returned to work as a delivery helper for Queen City TV and Appliances. Decedent testified that he was out of work until June 1, 2000 because of the pain in his back.
34. The Full Commission finds by the greater weight of the evidence of record that decedent did not constructively refuse suitable employment by testing positive for cocaine on October 5, 2001. The test was administered two days after he last worked and decedent had not reported for or been at work prior to the test. Therefore, the positive drug test results were not indicative of drug use or intoxication when reporting for work or while on the job and decedent did not violate defendant's drug policy. No evidence was presented that decedent ever reported for or attended work while intoxicated or under the influence of drugs.
35. The Full Commission finds by the greater weight of the evidence of record that decedent was not disabled after he was terminated from employment on January 5, 1999. Based upon his repeated denial of any drug use to his physicians, defendant-employer and in an Employment Security Commission hearing, the Commission finds that decedent was not credible. Decedent's own testimony is the only evidence entered at the hearing before the Deputy Commissioner that decedent retained any disability after December 29, 1998. Dr. DuPuy released decedent to return to work with no restrictions on December 29, 1998, and Dr. Rhyne did not take decedent out of work or give him any work restrictions. No medical evidence of any continuing disability was presented by decedent.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 3, 1998, decedent suffered a compensable injury by accident to his back arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. Decedent received total disability compensation from October 5, 1998 through December 30, 1998. N.C. Gen. Stat. § 97-29. Following the release to return to work on December 30, 1998, defendant did not allow decedent to return to work until January 5, 1999, at which time he was terminated from employment.
3. Defendant failed to show that decedent was discharged for misconduct or other fault, unrelated to his compensable injury, for which a non-disabled worked would ordinarily be terminated. Seagraves v. AustinCo. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996). Therefore, decedent did not constructively refuse suitable employment by testing positive for cocaine because defendant failed to show that decedent's actions were a violation of defendant's personnel policy. N.C. Gen. Stat. § 97-32.
4. Defendant admitted compensability of decedent's injury by accident on November 17, 1998 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remained with decedent. Sims v. Charmes/Arby's RoastBeef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
5. In order to meet the burden of proving disability, decedent must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by decedent's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). In the instant case no doctor took decedent out of work after his release to full-duty work without restrictions on December 29, 1998. Decedent failed to establish by the greater weight of the medical evidence that as a result of the compensable injury by accident he was incapable of work in any employment after January 5, 1999. N.C. Gen. Stat. §§ 97-2(9), 97-29; Russell V. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. As a result of his compensable injury by accident, decedent is entitled to additional temporary total compensation at the rate of $532.00 per week for the period December 31, 1998 to January 5, 1999.
7. As a result of his compensable injury by accident, decedent is entitled to payment of permanent partial disability compensation at the rate of $532.00 per week for nine weeks for the 3% permanent functional impairment to his back. N.C. Gen. Stat. § 97-31(23).
8. Decedent is entitled to payment of medical treatment incurred as the result of his compensable injury by accident. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay decedent's estate temporary total disability compensation at the rate of $532.00 per week from December 31, 1998 to January 5, 1999.
2. Defendant shall pay decedent's estate permanent partial disability compensation at the rate of $532.00 per week for nine weeks for the permanent partial disability rating of 3 % to decedent's back.
3. A reasonable attorney fee of 25% of the compensation due under Paragraphs 1 and 2 of this Award is approved for decedent's counsel and shall be paid by defendant to decedent's counsel by deducting that sum and paying the amount directly to counsel.
4. Defendant shall pay the costs.
This the 14th day of July 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING IN PART AND DISSENTING IN PART:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/kjd